**Maria Torres FRANQUEZ, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Joaquina Mendiola PALOMO, Does I–X and Estate of Doe, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Delfina Cruz CRUZ, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Felicita Santos SAN NICOLAS, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Juan C. MATERNE a/k/a Juan Materne Materne and Potenciana Cruz Materne, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 78–2370.

United States Court of Appeals, Ninth Circuit.

Sept. 24, 1979.

Robert L. Klarquist, Dept. of Justice, Washington, D.C. (argued), John J. Zimmerman, Dept. of Justice, Washington, D.C., on brief.

John A. Bohn, Agana, Guam (argued), Charles P. Starkey, Agana, Guam, on brief.

Before ELY, and SNEED, Circuit Judges, and FITZGERALD,* District Judge.

FITZGERALD, District Judge:

This consolidated appeal comes before us on limited record and presents a narrow issue for review. The district court denied motions made by the United States to strike plaintiffs' demands for a jury trial and granted trial by jury on the issue of fair compensation in cases brought under Section 204 of the Omnibus Territories Act of 1977.[1] The district court certified its interlocutory order for immediate appeal under 28 U.S.C. Section 1292(b). We affirm.

In the closing part of the Second World War and extending into postwar "cold war" years, the Department of Defense established large military bases on the island of Guam.[2] The United States acquired land for these bases from Guamanian landowners either by negotiated sale or condemnation proceedings, conducted in most cases under military authority.[3] In the following years the government and people of Guam contended that the United States had dealt unfairly with Guamanian landowners and had obtained land under conditions and procedures which failed to protect their right to fair and just compensation.[4]

Congress, responding to these complaints, in 1977 enacted Section 204 of the Omnibus Territories Act which provides in part as follows:

Notwithstanding any law or court decision to the contrary, the District Court of Guam is hereby granted authority and jurisdiction to review claims of persons, their heirs or legatees, from whom interests in land on Guam were acquired other than through judicial condemnation proceedings, in which the issue of compensation was adjudicated in a contested trial in the District Court of Guam, by the United States between July 21, 1944, and August 23, 1963, and to award fair compensation in those cases where it is determined that less than fair market value

---

* Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

1. Public Law 95–134, 91 Stat. 1159, 48 U.S.C. Section 1424c.

2. The island of Guam in the Marianas Islands was ceded to the United States by Spain under the Treaty of Peace signed at Paris on December 10, 1898, and proclaimed April 11, 1899. Guam is a territory of the United States under a territorial government established by Congress and supervised by the Secretary of the Interior. See Organic Act of Guam, 48 U.S.C. Section 1421, et seq., 64 Stat. 384, c. 512, August 1, 1950.

3. See comments on Section 204 made by Congressman Phillip Burton, chairman of the House Subcommittee on National Parks and Insular Affairs. 123 Cong. Record H10167 (September 27, 1977).

4. See comments of Congressman Won Pat, Representative from Guam. 123 Cong. Record H10168–10169.

was paid as·a result of (1) duress, unfair influence, or other unconscionable actions, or (2) unfair, unjust, and inequitable actions of the United States.[5] The district court[6] is authorized to employ the services of such special masters or judges as are necessary to carry out the purposes and intent of the statute.[7] However, the statute is silent on the question of whether the court may order a jury trial. Awards under Section 204 are judgments against the United States.[8] Prior judicial condemnation judgments in which the issue of compensation was adjudicated in a contested trial in the District of Guam remain res judicata, and cannot be reopened.[9]

Appellees are all claimants under Section 204 who filed timely demands for trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure. The district court ordered jury trial on the issue of just compensation, and the government has appealed. We conclude that the district court was correct.

 It is well established that there is no constitutional right to a jury trial in suits brought against the United States. Suits against the government require a legislative waiver of sovereign immunity, and are not suits at common law within the meaning of the Seventh Amendment. *Glidden Company v. Zdanok*, 370 U.S. 530, 572, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1961). Since the sovereign need not allow suit against it, Congress is free to allow suit on whatever terms it chooses, and may grant or deny jury trial as it sees fit. *McElrath v. United States*, 102 U.S. 426, 26 L.Ed. 189 (1880).

 As recognized by the district court, the legislative history of the Omnibus Terri-

tories Act provides little aid in determining whether Congress intended to grant or deny trial by jury under Section 204. The bill originally proposed by the House of Representatives contained a provision which directed the Secretary of Interior to review, determine, and pay claims arising from postwar land acquisitions in Guam by the United States.[10] The Senate disapproved this provision and drafted a new provision and procedure which provided for review of claims in the District Court of Guam. The Senate Committee reported that "[a]t base, the issue is the constitutional question of just compensation for federal acquisitions," and "any affirmative verdicts should stand as judgments against the United States without the necessity of additional authorization and the uncertainty of appropriations."[11] The House later adopted an amended version of the provision proposed by the Senate, the present Section 204. Although not dispositive, we note that the use of the term "verdict" is of some significance and conclude that grant of trial by jury is not inconsistent with legislative intent.

Although the district court did not find express congressional intent, it noted that the purpose of the Act was to provide for review of claims of landowners whose properties were unfairly acquired by the United States through the power of eminent domain. The court concluded that by "fair implication," Congress intended such claimants to be given the same rights as those landowners who had contested through jury trial the issue of fair compensation. By analogy, therefore, the district court determined that claimants under Section 204 should have the "same right to demand and be granted such jury trial" as similar land-

---

5. 48 U.S.C. § 1424c(a).

6. Congress created the District Court of Guam under the Organic Act of Guam. The District Court of Guam was established under Article IV, Section 3, of the Federal Constitution rather than under Article III. 64 Stat. 389, 48 U.S.C. § 1424(a). *Chase Manhattan Bank v. South Acres Development Co.*, 434 U.S. 236, 98 S.Ct. 544, 54 L.Ed.2d 501 (1978).

7. 48 U.S.C. § 1424c(d).

8. 48 U.S.C. § 1424c(e).

9. 48 U.S.C. § 1424c(b).

10. House Report (Interior and Insular Affairs Committee) No. 95–228, April 28, 1977 [to accompany H.R. 6550] at p. 5.

11. Senate Report (Energy and National Resources Committee) No. 95–332, July 6, 1977 [to accompany H.R. 6550].

owners would have had pursuant to Rule 71A(h) of the Federal Rules of Civil Procedure, applicable to condemnation proceedings brought under the federal power of eminent domain.

The government contends that the district court lacked authority to order a jury trial because neither the terms of the statute nor the legislative history contain an express authorization. Relying on the basic rule of construction that waivers of sovereign immunity must be strictly construed, the government argues that unless Congress, under the Act, expressly grants a jury trial, the court must decide that the waiver of immunity does not authorize trial by jury.[12] It is a fundamental principle that the terms of the sovereign's legislative consent to be sued define the court's jurisdiction to entertain the suit. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).[13] We cannot agree, however, with the government's position that the district court exceeded the jurisdictional parameters defined by Section 204 when it granted claimants a jury trial. We conclude instead that it was within the district court's authority to order a jury trial on the issue of just compensation.

In this regard, it is instructive to examine the analogous[14] source of a district court's discretionary authority under Rule 71A(h). In cases where the statute authorizing the exercise of eminent domain power by the United States does not specify how just compensation is determined, Rule 71A(h) authorizes a district court to order a jury trial.[15] Rule 71A(h) was promulgated[16] pursuant to the rule-making power of the United States Supreme Court under the Enabling Act,[17] and was adopted to provide more uniform procedures in federal condemnation acts.[18]

**12.** The district court concluded that the "Act should not be interpreted as creating a new cause of action against the United States and the concomitant waiver of sovereign immunity; rather the Act should be construed as an authorization to the court to review claims regardless of any statute of limitations or res judicata which may be applicable." Record on Appeal, pp. 53–54. We need not reach any possible issues raised by the district court's distinction because of the clear terms of Section 204 which grant both jurisdiction and authorize claims to be brought against the United States.

**13.** The government argues that "the specific terms of the consent-to-suit statute and only those specific terms, define the court's jurisdiction and procedure," citing *United States v. Sherwood,* supra at 586–587, 61 S.Ct. 767. (Opening brief for appellant, p. 10). We disagree with the government's reading of *Sherwood* and find no support for the conclusion that the specific terms must define the court's procedure.

**14.** The government argues that a more proper analogy to Section 204 would be to the Tucker Act or to the Federal Tort Claims Act. The Tucker Act provides jurisdiction in the Court of Claims, 28 U.S.C. § 1491, and concurrent jurisdiction in the United States district courts for claims not exceeding $10,000, 28 U.S.C. § 1346(a)(2), for certain monetary claims against the United States. Under 28 U.S.C. § 2402, actions brought under the Tucker Act and Federal Tort Claims Act, 28 U.S.C. § 1346(b), are tried by the court without a jury.

This argument must be rejected upon examination of the language of Section 204. The terms of the statute, including "fair compensation" and "fair market value," are terms commonly used in condemnation proceedings. Furthermore, the statute authorizes review of claims which originally could have been resolved through judicial condemnation proceedings, and therefore, Section 204 actions are more closely analogous to condemnation proceedings.

**15.** As in cases involving a waiver of sovereign immunity, there is no constitutional right to a jury trial in an action by the United States to condemn property under eminent domain. *United States v. Reynolds*, 397 U.S. 14, 18, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970); *Bauman v. Ross*, 167 U.S. 548, 593, 17 S.Ct. 966, 42 L.Ed. 270 (1897).

**16.** Added April 30, 1951, effective August 1, 1951, and amended January 21, 1963, effective July 1, 1963.

**17.** Act of June 19, 1934, c. 651, §§ 1, 2 (48 Stat. 1064), 28 U.S.C. § 2072, formerly 28 U.S.C. §§ 723b, 723c.

**18.** The Advisory Committee Note accompanying the 1948 draft describes the need as follows:

The need for a uniform condemnation rule in the federal courts arises from the fact that by various statutes Congress has prescribed diverse procedures for certain condemnation proceedings, and, in the absence of such stat-

The Enabling Act provides that the Supreme Court may prescribe "by general rules, practice and procedure" of the district courts. Such rules, however, "shall not abridge, enlarge, or modify any substantive right." The test of whether a rule exceeds the congressional mandate embodied in the Enabling Act is "whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941).

As clarified in the leading case of *Hanna v. Plumer*,[19] the Congressional power to make rules governing the practice and procedure in federal courts includes "a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either."[20] It has never been held, nor does the government argue, that the Supreme Court exceeded its delegated authority in promulgating Rule 71A(h). Therefore, the court's discretionary authority to grant a jury trial under Rule 71A(h) in federal condemnation actions does not result in a modification or enlargement of substantive rights in those cases where the statute is silent regarding the method of determining just compensation.

Although Rule 71A(h) is not directly applicable to actions brought under Section 204, 28 U.S.C. § 2071 empowers the district court to prescribe additional rules for the conduct of its business[21] as does Rule 83 of the Federal Rules of Civil Procedure.[22] Rule 83 grants two distinct rule-making powers. As described by one commentator, the first sentence of Rule 83 refers to adoption of general local rules, the second sentence refers to the court's "decision-making power" in the context of a particular case.[23] In the absence of proce-

---

utes, has prescribed conformity to local state practice under 40 U.S.C.A. [former] § 258. This general conformity adds to the diversity of procedure since in the United States there are multifarious methods of procedure in existence.

As noted by Professor Moore, before the adoption of Rule 71A, approximately 22 states utilized the methods of an initial determination by commissioners, with appeal to a jury, and 21 states utilized jury determination without a previous award by commissioners. Thus, the issue of just compensation was ultimately determined by a jury trial in federal condemnation proceedings in about 43 states. The remaining states relied principally on an initial determination by commissioners, with appeal to a judge. Moore's Federal Practice ¶ 38.32[2] at 250.

The 1951 Supplemental Statement by the Advisory Committee reports that a conference was held by the Court with the committee to discuss the question of whether the tribunal to award compensation should be a commission or a jury in cases where Congress has not made any specific provision on the subject. The Justice Department consistently advocated the use of the jury system for all cases where Congress had not made any specific provision. Influenced by the successful use of ,commissions by the Tennessee Valley Authority, 16 U.S.C. § 831x [former] to fix compensation in condemnation cases, the rules drafted by the committee and later adopted provided for a jury trial on the issue of just compensation unless the district court in its discretion orders that the issue of compensation be determined by commission.

**19.** 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**20.** *Id.* at 472, 85 S.Ct. at 1144.

**21.** 28 U.S.C. § 2071 provides as follows:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.

**22.** Rule 83 provides in pertinent part:

Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules . . . In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.

**23.** Note, "Rule 83 and the Local Federal Rules," 67 Columbia Law Review 1251 (1967); *see also Cuellar v. Hamer*, 45 F.R.D. 245 (W.D. Mich.1968); *see generally* Weinstein, Reform of Federal Court Rule-making Procedures, 76 Col.L.Rev. 905 (1976).

dural rules[24] specifically covering a situation, the court may, pursuant to its inherent power and Rule 83 decision-making power, fashion a rule not inconsistent with the Federal Rules. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976); *see also Republic International Corporation v. Amco Engineers, Inc.*, 516 F.2d 161 (9th Cir. 1975). Thus, we hold in the cases now before us that it was within the district court's discretionary authority to grant trial by jury on the issue of just compensation in Section 204 claims. The court's order was not inconsistent with Section 204[25] or the Federal Rules. The district court did not exceed its jurisdictional authority by granting a jury trial.

Accordingly, the order of the district court is affirmed.

SNEED, Circuit Judge, concurring:

I concur. Whatever problems our disposition of this appeal may engender, the better and more proper forum for their resolution is Congress. I am unwilling to assume that jury trials will not protect adequately the interests of the United States.

---

24. A member of the Advisory Committee which drafted the Federal Rules commented that very few supplemental local rules need to be formulated, but that most problems left unanswered by the Federal Rules should be disposed of under the decision-making power:

> [Rule 83] . . . permits judges to decide the unusual or minor procedural problems that arise in any system of jurisprudence in the light of the circumstances that surround them and of the justice of the case without the complications and injustice that must attend attempts to forecast the situations and to regulate them in advance either by general or by local rule.

A.B.A., Federal Rules of Civil Procedure, Proceedings of the Institute at Washington (1938) quoted in Note, "Rule 83 and the Local Federal Rules," *supra* at 1255–1256; *see also* Comment, "The Local Rules of Civil Procedure in the Federal District Courts—A Survey," 1966 Duke L.J. 1011 (1966).

25. The government's argument that the statutory provisions allowing utilization of special masters is inconsistent with use of a jury to determine just compensation must be rejected. The report of a master serves an advisory and evidentiary capacity and, under Federal Rule of Civil Procedure 53, does not preclude the use of a jury.