# Legislation Prohibiting Payment of Interest on Compensation Awards Under the 1980 Omnibus Territories Act

Congress may eliminate or modify claims which are purely statutory without violating the Fifth Amendment to the Constitution, unless those claims have ripened into final judgments. Thus, legislative repeal of a provision requiring payment of interest on compensation awards authorized by 48 U.S.C. § 1424c is constitutionally permissible, except insofar as it purports to affect cases in which an award of damages has become final.

July 29, 1981

## MEMORANDUM OPINION FOR THE COUNSEL TO THE DIRECTOR, OFFICE OF MANAGEMENT AND BUDGET

This responds to your request for the views of this Office with respect to the constitutionality of proposed legislation prohibiting the payment of interest on compensation awards made under certain provisions of the 1980 Omnibus Territories Act, 48 U.S.C. § 1424c (Supp. IV 1980). For the reasons that follow, we believe that any such prohibition would be constitutional unless it were applied to final judgments awarded under § 1424c.

### I. Background

In the latter stages of World War II and into the postwar years, the Department of Defense established certain military bases on the island of Guam. The land used for these bases was acquired from local landowners either through negotiated sale or through condemnation proceedings, generally conducted under military authority. *See* 123 Cong. Rec. 31073 (1977) (remarks of Rep. Burton); *Franquez* v. *United States,* 604 F.2d 1239 (9th Cir. 1979). Thereafter, some local landowners contended that the United States had treated them unfairly and thus deprived them of their right to just compensation under the Fifth Amendment.

The statutory provisions at issue here responded to these contentions. In 1977, Congress passed 48 U.S.C. § 1424c, which grants the district court of Guam jurisdiction

> to review claims of persons, their heirs or legatees, from
> whom interests in land on Guam were acquired other

235

than through judicial condemnation proceedings, in which the issue of compensation was adjudicated in a contested trial in the District Court of Guam, by the United States between July 21, 1944, and August 23, 1963, and to award fair compensation in those cases where it is determined that less than fair market value was paid as a result of (1) duress, unfair influence, or other unconscionable actions, or (2) unfair, unjust, and inequitable actions of the United States.

Under these provisions, fair compensation is defined to include "such additional amounts as are necessary to effect payment of fair market value at the time of acquisition, if it is determined that, as a result of duress, unfair influence, or other unconscionable actions, fair market value was not paid." 48 U.S.C. § 1424c(c). Since the enactment of a 1980 amendment, Pub. L. No. 96-205, § 301, 94 Stat. 84, 87-88, this provision has required payment of interest on sums not paid.

## II. Discussion

At the outset, we note that the rights created by 48 U.S.C. § 1424c are statutory in nature. If landowners in Guam have a constitutional claim to just compensation under the Fifth Amendment, and if just compensation must include interest payments, *see Shoshone Tribe of Indians* v. *United States,* 299 U.S. 476, 497 (1937), nothing in § 1424c bars an appropriate suit in the Court of Claims. The allowance of interest payments under the current provision does not affect the availability of such payments under the Just Compensation Clause; similarly, the disallowance of interest payments under a statutory amendment would not affect suits in which recovery was sought, not under the statute, but for a constitutional "taking." We do not believe that 48 U.S.C. § 1424c should be understood to preempt existing statutes that may provide remedies for constitutional takings.

In this light, the primary issue raised by your inquiry is whether, in cases in which the Fifth Amendment does not require compensation, legislative repeal of the allowance of interest by § 1424c would be constitutional. We believe that such a repeal would be permissible except to the extent that it purported to affect judgments that are final in the sense that a determination of damages and liability has been made and the time for the taking of an appeal has passed.

The general rule is that once an award of damages has become final, Congress may not constitutionally eliminate the liability of the United States under a final judgment. The rule was stated in *McCullough* v. *Virginia,* 172 U.S. 102, 123–24 (1898):

> It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate ac-

236

tions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

In certain cases, of course, Congress may alter the remedies issued in a final judgment, but there is no authority for the proposition that Congress may eliminate a final judgment for monetary relief. The basic rule is stated in numerous cases. *See, e.g., Pennsylvania* v. *Wheeling and Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 431 (1855) (allowing Congress to overturn final judgment requiring removal of bridge as obstruction to navigation, but stating "if the remedy in this case had been an action at law, and a judgment entered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of Congress") (dictum); *Hodges* v. *Snyder,* 261 U.S. 600, 603–04 (1923), ("a suit brought for the enforcement of a public right . . . even after it has been established by the judgment of the court, may be annulled by subsequent legislation and should not be thereafter enforced; although, in so far as a private right has been incidentally established by such judgment, *as for special damages to the plaintiff or for his costs,* it may not be thus taken away") (emphasis added); *Daylo* v. *Adminstrator of Veterans' Affairs,* 501 F.2d 811, 816 (D.C. Cir. 1974); *Comm'rs of Highways of Towns of Annawan, et al.* v. *United States,* 466 F. Supp. 745, 764–65 (N.D. Ill. 1979) ("It is clear that the River and Harbor Act of 1958 could not . . . interfere with plaintiffs' rights under the condemnation decrees"); *Battaglia* v. *General Motors Corp.,* 169 F.2d 254, 259 (2d Cir. 1948) (Congress may eliminate or modify claims, "so long as the claims, if they were purely statutory, had not ripened into final judgment").

In our view, these cases compel the conclusion that once an award under § 1424c has become final, the prevailing party has a "vested right" to them, and Congress may not remove that right without violating the Fifth Amendment. For this reason, we believe that any legislation insulating the government from liability under the Act may affect only those claims that have not been made subject of a final judgment. At the same time, the cases cited above stand for the proposition that, before final judgment has been entered, Congress may affect the relevant claims by eliminating the provision for payment of interest.

We understand that the claims to be litigated in district court in Guam will be subject to a bifurcated proceeding: an initial trial on damages, in which the verdict is solely advisory; and a subsequent trial on liability. If a claimant prevails at the liability stage, the determination of damages will become relevant, though it is subject to modification by the trial judge. Under this procedure, the award will not become final for Fifth Amendment purposes until the time for the taking of an appeal from the liability ruling has passed.

## III. Conclusion

For the reasons stated above, Congress has the authority to eliminate interest payments on awards made under 48 U.S.C. § 1424c unless the right to such payments had become "vested" in the sense that it is the subject of a final judgment. In all other cases, Congress may modify § 1424c without violating the Fifth Amendment.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*