**In re A.H. ROBINS COMPANY, INC., "Dalkon Shield" IUD Products Liability Litigation.**

**No. MDL No. 211.**

United States District Court, D. Kansas.

May 29, 1985.

OPINION AND ORDER

THEIS, District Judge.

This case is currently before the Court on defendant A.H. Robins Company's motion for reconsideration of this Court's Order of April 8, 1985, which concerned plaintiffs' motion to compel production of five memoranda [the Burke memoranda] and plaintiffs' oral motion to incorporate an order issued by Magistrate John B. Wooley in *Goss, et al. v. A.H. Robins Co.*, No. 81–1285 [the *Goss* Order], into the instant action. In the Order of April 8, this Court held that the crime or fraud exception to the attorney-client privilege and the work product doctrine applied in the present action and made the Burke memoranda discoverable. Because in its motion for reconsideration Robins has more fully delineated its objections to the application of the crime or fraud exception, the Court shall withdraw its Order of April 8, substitute this Opinion and Order in its place, and expand its analysis of the crime or fraud issue.

This multidistrict litigation, assigned to this Court for discovery purposes, involves

plaintiffs' claims against Robins for injuries arising from the sale and use of an intrauterine birth control device, the Dalkon Shield. Essentially, the plaintiffs maintain that Robins is liable for injuries caused by the Dalkon Shield because: Robins failed to adequately test the Dalkon Shield before marketing it; Robins ignored the mounting evidence concerning the dangers of the Shield; when Robins discovered the dangers of the Shield, it failed to warn users of the dangers; and Robins attempted to cover up evidence of the product's dangers. Robins denies all of these contentions and claims it sold a safe and effective product.

Specifically at issue here is plaintiffs' motion to compel production of the Burke memoranda. Robins contends that the Burke memoranda are protected by the attorney-client privilege and the work product doctrine. The memoranda, dated between 1976 and 1980, were addressed to regional, divisional and district managers and sales representatives of Robins and concerned the Dalkon Shield litigation. Four of the memoranda were drafted by or under the supervision of attorneys retained or employed by Robins for the signature of John L. Burke, at that time the Robins Vice President to whom the recipients of the memoranda reported. The fifth memorandum was drafted under the supervision of Robins' general counsel, William A. Forrest, Jr., and bears both his and Burke's signatures. Robins claims that all five memoranda request information needed by counsel to defend Robins in litigation.

Plaintiffs initially argued that the memoranda are not protected from discovery because Burke is a sales representative and not a lawyer. Plaintiffs extended their argument to contend that if the memoranda are subject to the attorney-client privilege or the work product doctrine, then the crime or fraud exception applies and makes the memoranda discoverable. Dk. no. 762. Thus, the question of application of the crime or fraud exception is presently pending in this multidistrict litigation [MDL].

These same five memoranda were the subject of discovery in five non-MDL cases, *Goss, et al.* The parties argued the matter of discoverability before Magistrate Wooley, who issued an Order on January 28, 1985, holding that the documents were discoverable under the crime or fraud exception. Plaintiffs have moved to incorporate the *Goss* Order into the instant case. Because the motion to incorporate raises precisely the same issues as the motion to compel, and in light of this Court's ruling on the motion to compel, the motion to adopt the *Goss* Order by reference shall be denied as repetitious.

## I. DUE PROCESS

■ As a preliminary matter, Robins argues that a decision by this Court regarding the existence or application of the crime or fraud exception without an evidentiary hearing violates notions of due process. To the contrary, the Court finds that the demands of due process do not require an evidentiary hearing in this case. The fundamental requisites of due process consist of notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970); *see also Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The nature of the specific process due in a given instance, however, varies according to the factual circumstances of the case and the nature of the interests involved. *Board of Curators v. Horowitz,* 435 U.S. 78, 87–89, 98 S.Ct. 948, 953–955, 55 L.Ed.2d 124 (1978); *Benson v. Scott,* 734 F.2d 1181, 1185 (7th Cir.1984).

■ In determining whether the procedure used in a case complied with due process, a court must balance three factors: first, the nature of the individual interest at stake; second, the risk of erroneous deprivation and probable value of additional procedural safeguards; and third, the nature of the governmental interest involved. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). In the

present case, the interest Robins has at stake is an interest in a *discovery* motion, involving at most a ruling which would allow the discovery of additional evidence, not a decision on the merits of the underlying litigation. The risk of erroneous deprivation was guarded against by allowing the parties to submit written memoranda. The sole additional procedural safeguard desired by Robins is an evidentiary hearing upon the same subjects addressed in the written memoranda. Finally, the nature of the government interest to be weighed against Robins' concerns is compelling: the efficient administration of the courts.

■ Rule 15(d) of the Rules of Practice of the United States District Court for the District of Kansas attempts precisely the balancing required by the due process clause:

> Oral argument on any motion is not permitted unless ordered by the Court. Argument may be had only in the Court's discretion, on written request and proper showing of any party, or upon the Court's own initiative. Request for oral argument shall be separately stated at the conclusion of the motion or written memorandum of any party. If oral argument is ordered by the Court, the motion shall be promptly set down and heard, otherwise, the motion shall be submitted and determined on the written memoranda of the parties.

Due process guarantees no particular form of procedure; it does not require an oral hearing in every instance. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406 (1974); *Sullivan v. Carignan*, 733 F.2d 8, 9 (1st Cir.1984). Essentially, due process requires fair treatment. *Karnstein v. Pewaukee School Board*, 557 F.Supp. 565, 567 (E.D.Wis. 1983). Under Rule 15(d), Robins was afforded the same opportunity to be heard—by way of written memoranda—as all other litigants on motions before this Court.

Robins relies on the Third Circuit Court of Appeal decision in *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557 (3rd Cir.1985), for the proposition that an evidentiary hearing is required to satisfy the demands of due process. In *Eash* the district court imposed a monetary sanction upon the defendants' attorney for settling a case on the eve of trial, after the plaintiffs' attorney had repeatedly attempted to effect an earlier settlement. The court of appeals reversed the imposition of sanctions because the district court had failed to hold an evidentiary hearing prior to sanctioning the attorney. The instant case differs dramatically from *Eash* in two respects. No question of personal sanctions is under consideration in the present motion; the issue here revolves around the scope of permissible discovery. Perhaps more importantly, though, in *Eash* the district court gave no advance notice that it contemplated imposing sanctions and allowed no briefing of the issue prior to ruling. Robins has been given ample opportunity to submit briefs to the Court concerning the subject of this Opinion and Order.

■ Robins complained at oral argument on the motion for reconsideration that the schedule of the Court, established at the February 14, 1985 hearing, which provided for simultaneous filing of briefs on the crime or fraud exception issue, impinged on Robins' right to due process. At the February 14 hearing, however, when the Court ordered simultaneous filing of briefs, Robins voiced no objection to the timing. Transcript of February 14, 1985 Hearing, Dk. no. 760, pp. 75–76. In fact, Gilbert Schill's response to the Court's scheduling order was "That is satisfactory with Robins, Your Honor." *Id.* at 76. Robins cannot now be heard to complain.

■ The touchstones of procedural due process are fairness and reasonableness. *Whitfield v. Simpson*, 312 F.Supp. 889, 894 (E.D.Ill.1970). In this instance, Robins had adequate notice of the precise issue, given the *Goss* Order, the plaintiffs' motion and the acknowledgment at oral argument before this Court that both sides would submit briefs. Furthermore, the opportunity to be heard was fair and reasonable. Robins was afforded ample opportunity, and Robins availed itself of that opportunity, to

present evidence in written form to the Court. Robins submitted a lengthy memorandum in opposition to plaintiffs' motion to compel production of the Burke memoranda. Dk. no. 761. Robins also submitted a lengthy memorandum in support of its motion for reconsideration of this Court's Order concerning the crime or fraud exception, which memorandum had an attachment containing specific objections to the evidence relied upon by the Court. Dk. no. 779. Finally, Robins was given the opportunity at the May 2, 1985 hearing to orally argue its motion for reconsideration. Due process requires no more.

## II. THE ATTORNEY–CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

█ With respect to the attorney-client privilege and work product doctrine, the first issue is whether to apply state or federal law. Regarding privileges, Federal Rule of Evidence 501 directs the Court to apply the relevant state law in diversity cases. Concerning the work product doctrine, the Federal Rules of Civil Procedure are controlling. *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). Since this is a multidistrict proceeding, the question arises as to what state's law of privilege the Court should apply. The parties apparently agree that this Court should employ Kansas law with respect to the privilege determination. The Court finds Kansas law to be applicable but notes that the Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions. *See, e.g.,* Mo. Rev.Stat. § 491.060(3) (1982 Supp.).

Since Robins seeks to assert the attorney-client privilege and the work product doctrine as bars to discovery, it has the burden of establishing that they are applicable. *BarclaysAmerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir.1984). Robins has submitted the Burke memoranda for *in camera* inspection. Robins argues that the memoranda in question were prepared under the supervision of counsel in anticipation of trial, were sent by counsel or counsel's representatives to Robins' employees, seek information in connection with ongoing litigation, and include attorneys' mental impressions, opinions and conclusions.

█ Plaintiffs suggest that because the memoranda contain the signature of a sales representative, they are not protected by either the attorney-client privilege or the work product doctrine. The Court disagrees. Since the memoranda were formulated by attorneys and reveal the attorneys' mental processes, they are precisely the type of documents the United States Supreme Court recognized to be attorney-client communications in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Similarly, because the memoranda were prepared in anticipation of litigation, the work product doctrine attaches. Fed.R.Civ.P. 26(b)(3).

## III. THE CRIME OR FRAUD EXCEPTION

Plaintiffs contend that if the documents are privileged, they lost their privileged status because of the crime or fraud exception to the work product doctrine and the attorney-client privilege. Under Kansas law, the attorney-client privilege does not extend to "a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or tort." K.S.A. § 60–426(b)(1) (1983). The Tenth Circuit has enunciated the standards governing consideration of the crime or fraud exception to the work product doctrine in *In Re Grand Jury Proceedings (Vargas)*, 723 F.2d 1461, 1467 (10th Cir.1983):

> The privilege does not apply where the client consults an attorney to further a crime or fraud.... Before the privilege is lost "there must be 'prima facie' evidence that [the allegation of attorney participation in a crime or fraud] has some foundation in fact." (Citations

omitted.) ... As this court held in its opinion *In re September 1975 Grand Jury Term*, 532 F.2d 734 (10th Cir.1976), "[t]he determination of whether the [party] shows a prima facie foundation in fact for the charge ... lies in the sound discretion of the trial court." *Id.* at 737.

Robins suggests that there is disagreement whether the crime or fraud exception even applies to the work product doctrine. In its later opinion *In Re Grand Jury Proceedings (Vargas)*, 727 F.2d 941, 946 (10th Cir.1984), the Tenth Circuit explained that its earlier *Vargas* opinion was intended to "set forth the standards to be employed by the trial court when determining the application of the crime or fraud exception to the attorney-client or work product privileges."

■ The attorney-client privilege is not destroyed when a client seeks advice about a past crime or fraud. *In Re Grand Jury Proceedings*, 604 F.2d 798, 802 (3d Cir. 1979). A client may consult a lawyer with respect to the client's *past* wrongdoings, and the crime or fraud exception cannot vitiate this privilege. *See In Re Berkley & Company, Inc.*, 629 F.2d 548, 553 (8th Cir. 1980). As Robins points out, a contrary rule would destroy the privilege when it is needed most. The threshold test is evident from the language of the statute: the legal advice must be "sought or obtained in order to enable or aid the commission or planning of a crime or tort." K.S.A. § 60–426(b)(1).

■ Robins appears to advance an argument that the plaintiffs' *prima facie* showing must include proof that Robins had constructed a fraudulent plan prior to consulting with its attorneys. The statutory language that the legal service must not be "obtained ... to enable or aid" a crime or fraud does not preclude the circumstance in which the crime or fraud originates with the attorneys' advice or evolves from attorney-client interactions. Furthermore, the statute clearly imports that if legal services are used to "aid the commission" of, such as by covering up, a continu-

ing crime or fraud, then the attorney-client privilege is lost.

■ The focal issue is whether the record reflects sufficient evidence to invoke the crime or fraud exception. The Court does not offer any opinion as to the truth of the facts asserted in the pleadings. At this juncture, the Court is concerned solely with applying the known facts to the plaintiffs' burden of establishing only a *prima facie* showing of crime or fraud. Therefore, the conclusions reached in this opinion are limited to the purposes of this motion, and the Court need not formulate any opinions about the actual merits of the assertions of crime or fraud.

The Court has reviewed all motions and attachments submitted by plaintiffs and by Robins with respect to this matter. The Court has heard oral arguments by both parties on this issue. In addition, the Court has examined the Amicus Curiae Brief in Support of Plaintiffs' Motion to Compel, the Burke memoranda submitted for the Court's *in camera* inspection and all pleadings and Magistrate Wooley's Order in *Goss, et al.* Furthermore, the Court brings its over nine years of experience with the multidistrict litigation to bear on the ruling in this matter. Since K.S.A. § 60–426(b)(1) (emphasis added) requires "sufficient evidence, *aside from the communication*," to warrant a finding that the crime or fraud exception should apply, the Burke memoranda themselves were not viewed by the Court as evidence of whether to invoke the exception.

Attached to Plaintiffs' Second Supplemental Memorandum in Support of the Motion to Compel Production is a report by Special Masters Peter N. Thompson and Thomas C. Bartsh concerning waiver of the attorney-client privilege and the work product doctrine. The Masters were appointed specifically to monitor and assist with discovery in related Dalkon litigation in the United States District Court for the District of Minnesota. They examined over 15,000 pages of documents that were produced for *in camera* inspection.

■ Robins contends that this Court erred in taking judicial notice of the contents of the Masters' Report. Robins misunderstands the nature of this Court's action. Although the Masters' Report had not yet been approved by the United States District Court for the District of Minnesota which commissioned the Masters, pursuant to Federal Rule of Civil Procedure 53, this merely means that there had been no final judicial determination by the Minnesota court as to the validity of the matters contained in the Report. Thus does not deprive the Report of its value as evidence or as a guidepost leading to admissible evidence. Robins apparently believes that because the Masters examined the facts by virtue of their judicially appointed positions, the unapproved Masters' Report is susceptible only of being ignored.

The Court only took judicial notice of the Report, not of its contents. The Court is not holding that the facts in the Report are not subject to reasonable dispute, but simply that the fact that Masters Thompson and Bartsh reported certain things is not subject to reasonable dispute. Therefore, judicial notice of the Report, but not of its contents, is proper under Rule 201 of the Federal Rules of Evidence.

Masters' reports serve an advisory and evidentiary capacity. *Franquez v. United States,* 604 F.2d 1239, 1244 (9th Cir.1979). This Court looked at the contents of the Masters' Report in an evidentiary fashion, much in the same way the Court would look at a deposition, exhibit or affidavit. In its motion for reconsideration, Robins specified its objections to the Masters' findings, which objections the Court has carefully considered in making the present ruling.

■ In its particularized objections to the Masters' Report, Robins suggests the Masters arrived at a number of their conclusions without adequate foundation. That a report is conclusory is an insufficient reason to reject it in its entirety. *See, Black, Sivalls & Bryson, Inc. v. National Tank Co.,* 445 F.2d 922, 926 (10th Cir.1971). In evaluating the weight to accord the Masters' Report, the Court considered the nature and circumstances surrounding the preparation of the Report, the evidence relied upon by the Masters in reaching their conclusions, and the logical strength of the reasoning employed by the Masters. Use of the contents of masters' reports in this fashion—as evidence, *not* as facts not subject to reasonable dispute—is eminently proper. *See, e.g., Charles A. Wright, Inc. v. F.D. Rich Co.,* 354 F.2d 710, 714 (1st Cir.), *cert. denied,* 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966).

Although the Masters applied the Minnesota law of privilege to the facts before them, Minnesota law does not differ substantially from the law applied in the present case. In fact, Minnesota law appears to be more stringent than Kansas law regarding the crime or fraud exception. The Masters note that "courts have placed a heavy burden on the party opposing the claim of privilege to establish a *prima facie* case...." *Hewitt v. A.H. Robins Co.,* No. 3–83–1291 (Report (II) of the Special Masters) at 4 (D.Minn., *unpublished,* February 21, 1985).

In *Hewitt* and in the present case, plaintiffs allege that Robins has engaged in an ongoing scheme of knowing misrepresentation to the public concerning the effectiveness of the Dalkon Shield. Plaintiffs maintain that even after Robins stopped marketing the Dalkon Shield, large numbers of women continued to use the product and the company continued to represent that the Shield was both safe and effective. In particular, the Masters refer to Robins' dependence upon a study by Dr. Hugh Davis to support the claim that the Dalkon Shield was effective in preventing pregnancy. The Masters note that "Robins' reliance on the Davis study ... is questionable because it involved a predecessor product to the marketed Dalkon Shield." *Id.* at 13. Furthermore, with regard to studies by Drs. Earl, Ostergard and Gabrielson, which studies Robins used as promotional tools, the Masters determined: "Robins published and cited the studies to encourage sale when Robins knew that the results

of the studies were inaccurate and misleading." *Id.* at 16. The Masters concluded:

Defendant was well aware that pregnancy is associated with increased health risks, and that women, particularly women with pre-existing health problems, might choose, or be prescribed, the Dalkon Shield as opposed to another contraceptive to protect against exposure to the adverse health risks of pregnancy. Defendant subsequently was informed of a possible increased risk of septic abortion associated with pregnancies occuring with the Dalkon Shield in place. (See Dear Doctor Letter of 1974.) Thus, representations as to the efficacy or pregnancy rate of the Dalkon Shield reflect directly on the safety of the product. The allegation that a drug company would knowingly misrepresent to the public the safety characteristic of its product is a most serious allegation. In our view, such a serious allegation must be, and in this case was, carefully substantiated before concluding that a *prima facie* case of fraud has been established.

*Id.* at 17.

For purposes of their rulings on the attorney-client privilege and the work product doctrine issues, the Masters determined that the plaintiffs had established a strong *prima facie* case that Robins, with the knowledge and participation of counsel, engaged in an ongoing fraud by misrepresenting the safety and efficacy of the Dalkon Shield from 1970 to 1974:

Plaintiffs maintain that the ongoing scheme to misrepresent to the public the nature and efficacy of the Dalkon Shield was perpetuated in a cover up phase at the direction of William A. Forest, Jr., Secretary and General Counsel. It is clear from the various depositions and exhibits that the legal department was closely involved in questions of labeling, marketing, product characteristics, and dealings with the FDA, as well as litigation about the Dalkon Shield. Thus, it is a reasonable inference that corporate counsel was aware of the facts giving rise to the ongoing fraudulent scheme discussed above.

*Id.* at 18.

In addition, the Masters pointed to the decision in *Harre v. A.H. Robins Co.*, 750 F.2d 1501 (1985), in which the Eleventh Circuit concluded that a Robins' expert witness/consultant committed perjury, with complicity of counsel. The Masters stated, "We obviously do not rely on these decisions for our factual determinations in this matter, but they do tend to corroborate our finding of at least a *prima facie* case of a massive fraudulent scheme perpetrated on the public with the knowing assistance of members of the professional bar." *Id.* at 24. The Masters also found that Robins marketed a copper-active drug requiring FDA pre-market clearance without applying for or obtaining the requisite clearance. Further, the Masters determined that documents related to the litigation were destroyed or withheld, apparently with the knowledge of Robins' counsel.

Robins specific objections to the work of the Special Masters have three main focuses. First, Robins asserts that the Masters' conclusions are based upon insufficient evidence. The Masters, however, noted no paucity of evidence before them. Had the Masters desired additional evidence, they were particularly in a position to request it. In fact, the Masters found that their conclusions were supported by "overwhelming evidence." Dk. no. 762, p. 9.

Second, Robins maintains that if any fraud did occur, it was confined to the period in 1971 when Robins allegedly avoided FDA review. If fraud did occur in 1971, a question which this Court does not attempt to ultimately answer, to the extent that the Dalkon Shield continued to be marketed and worn by women, the fraud would not be completed while harm, if any, was still accruing.

Third, Robins suggests that juries, which, according to Robins, have reviewed more evidence than the Masters, found in favor of Robins on the issues of copper fraud and pregnancy fraud. Robins

points to defense verdicts it has obtained in a number of cases and suggests that these verdicts argue against the application of the crime or fraud exception. Dk. no. 779, Exh. 1, pp. 14, 17–18. The Court agrees that a court may look at related proceedings in other courts, if those proceedings have a direct bearing on the matters at issue. *St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979); *see also U.S. v. M.P.M., Inc.*, 397 F.Supp. 78, 103 (D.Colo.1975). Furthermore, a court may draw reasonable inferences from the judicial notice it takes of the records in prior related proceedings. *Matter of Missionary Baptist Foundation of America*, 712 F.2d 206, 211 (5th Cir.1983).

Plaintiffs direct the Court's attention to a number of verdicts against Robins, where the juries awarded punitive damages and thus found Robins guilty of fraud or, at the least, gross and wanton recklessness. *See, e.g., Strempke v. A.H. Robins Co.*, No. 3–80–Civ–169 (D.Minn., June 6, 1983); *Worsham v. A.H. Robins Co.*, No. 80–1590–Civ–WMH (S.D.Fla., February 18, 1982); *Palmer v. A.H. Robins Co.*, No. C–60442 (Denver, Colorado District Court, June 13, 1980). Specifically, plaintiffs note the jury verdict in *Tetuan v. A.H. Robins Co.*, No. 82 C 304 (May 3, 1985), from the District Court of Sedgwick County, Kansas, in which special interrogatories were submitted to the jury, asking the jurors whether the plaintiff had proved her claim of fraud against Robins. The jury found that Tetuan had proved fraud and assessed punitive damages of $7.5 million against Robins.

The Court is not giving more credence to the fraud verdicts than to the verdicts of no liability. The import of the verdicts, however, is different for the purposes of the present motion. The verdicts in favor of Robins mean the jury found either no causation or no actual damages. *See, e.g., Compere v. A.H. Robins Co.*, No. 3–77–287 (E.D.Tenn., January 17, 1980), *aff'd*, 661 F.2d 932 (6th Cir.1981). In either of those instances, the issue of punitive damages, and therefore of fraud, is not reached. The

verdicts in favor of Robins, then, may be viewed not as non-fraud verdicts, but as non-causation verdicts. In cases where fraud was alleged and evidence introduced, verdicts against Robins in which punitive damages are assessed against Robins are necessarily findings that Robins committed a fraud.

 Robins argues that there are cases in which juries have decided specifically that Robins did not commit misrepresentation. *See, e.g., MaGuire v. A.H. Robins Co.*, No. 78–HC–0191 (D.Colo., November 6, 1980); *Guenther v. A.H. Robins Co.*, No. 3–80–663 (D.Minn., January 13, 1984). That Robins may have rebutted allegations of fraud in some cases may somewhat diminish the weight to be given those cases in which Robins was found to have committed fraud. However, while the exact tally of such cases on each side may influence how this Court would decide the ultimate issue, it does not go to whether the plaintiffs have met their burden of establishing a *prima facie* case of fraud or crime for discovery purposes.

In addition to the reports of the Special Masters, plaintiffs point to other evidence that Robins, with the assistance of counsel, conducted its affairs so as to cover up some aspects of its marketing, testing and advertising of the Dalkon Shield. The amicus brief refers to discovery misconduct occurring in cases assigned to the Honorable Miles Lord in the United States District Court for the District of Minnesota. Judge Lord conducted discovery proceedings and learned that numerous files which had been requested by plaintiffs were never produced by Robins. Judge Lord entered an Order on February 9, 1984, which included the following finding:

It is true that this has been a much discovered case for nearly a decade now. It is also true that the defendant has been subject to discovery conducted pursuant to the Multidistrict Litigation Proceedings. However, despite all of this previous discovery, the documents presently sought by plaintiffs have never

been produced. Indeed, defendant's counsel admitted that many of these sought after files have never been reviewed for non-privileged material, notwithstanding the fact that the files likely contain information that would have been responsive to previous discovery requests.

*Dean, et al. v. A.H. Robins Co.*, No. 3–83–1025 (D.Minn., *unpublished*, February 9, 1984). In his Order, Judge Lord required Robins to produce all documents concerning safety tests conducted on the Dalkon Shield.

Robins claims the quoted statement "arose from what the Eighth Circuit has recognized to be Judge Lord's 'pervasive bias and prejudice.'" Dk. no. 779, p. 6. Robins cites to the Eighth Circuit's decision in *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1192–93 (8th Cir.1984). Robins is confusing two appeals. The quoted paragraph above is from a discovery order issued by Judge Lord on February 9, 1984. Robins filed a petition for a writ of mandamus seeking review of Judge Lord's Order of February 9. On February 23, 1984, the Eighth Circuit Court of Appeals entered an Order denying the petition for writ of mandamus and upholding Judge Lord's February 9 discovery order. *In Re: A.H. Robins Co.*, 732 F.2d 161 (8th Cir.1984). On the other hand, *Gardiner* involved Judge Lord's actions in a February 28, 1984 settlement conference. The Eighth Circuit's "bias and prejudice" comment was specifically targeted toward Judge Lord's statements in the context of the settlement conference.

Viewed in the most persuasive light, Robins has made a "taint" argument: that the Court should discount Judge Lord's earlier perceptions of discovery abuses because he was later admonished in the context of a settlement conference. While one interpretation might be that Judge Lord's "bias" caused his statements concerning improper discovery, the alternate explanation is that Judge Lord's observation of discovery problems engendered his "bias." It is unnecessary for the Court to become entangled in this chicken-and-egg dilemma, because even if the Court wholly ignores Judge Lord's comments, the Court has sufficient other evidence to reach a determination concerning the crime or fraud exception.

In the present MDL proceedings, this Court has conducted extensive discovery, including document production and depositions of Robins' employees. In August of 1981 and again in September of 1982, the Court reopened discovery proceedings when the plaintiffs represented that much documentation existed that had not been produced. During the course of the reopened discovery, many additional documents were produced.

Although Robins complains about the use of other proceedings as evidence of crime or fraud in the instant case, the Court finds Robins procedural conduct in other cases to be relevant to the present motion. When the issue is whether Robins perpetrated a massive fraud to deceive the public, the cases across the country cannot be viewed as discrete and isolated instances.

In the amicus brief, Florida counsel Stephen Lindsey Gorman draws the Court's attention to the status of discovery proceedings and document production in other cases throughout the nation. In the District Court of the Fourth Judicial District in Minnesota, the Honorable Jonathan Lebedoff entered an order on February 10, 1984, compelling Robins to produce certain "secret" documents. *Laughlin v. A.H. Robins Co.*, No. 77–6868. On March 21, 1984, Judge Lebedoff entered another order in the same case overruling Robins' claim of work product protection for the six "secret studies" documents, ruling that plaintiffs had shown substantial need and an inability to obtain the test data elsewhere without undue hardship. According to plaintiffs, to date Robins has not produced any of the "secret studies" documents in *Laughlin*.

In the United States District Court for the District of South Carolina, on June 12, 1984, in *Pate v. A.H. Robins Co.*, No. 83–

2005–2, the Honorable C. Weston Houck ordered Robins to produce all of the "secret" Robins documents within fifteen days. Robins settled the case immediately thereafter without producing any of the documents.

On July 6, 1984, the Honorable Winston Arnow entered an order in *Zelius v. A.H. Robins Co.*, No. 83–4249–WEA, pending in the United States District Court for the Northern District of Florida, compelling Robins to produce the documents concerning testing of the Dalkon Shield. Robins filed a motion for reconsideration of Judge Arnow's order, which was denied on August 20, 1984. Robins filed a motion for a stay pending appeal, which was denied by Judge Arnow on September 6, 1984. Then Robins filed a petition for a writ of mandamus and sought a stay in the Eleventh Circuit Court of Appeals, which was denied on September 11, 1984. On September 20, 1984, Judge Arnow entered an order compelling Robins to produce the documents on or before November 5, 1984, under a threat of striking Robins' pleadings as a sanction for noncompliance. Robins then made a partial production of the documents in *Zelius.*

In *Bush v. A.H. Robins Co.*, No. GCA 82–32, United States District Judge Maurice M. Paul of the Northern District of Florida entered an order on September 19, 1984, compelling Robins to produce the "secret studies" documents no later than noon on October 5, 1984. *Bush* was settled on October 4, 1984, without the production of the "secret studies" documents by Robins.

Plaintiffs maintain that Robins has a pattern of settling cases to avoid production of documents. Furthermore, plaintiffs suggest that Robins delays document production with stalling tactics, such as motions for reconsideration, requests for stays or attempted appeals of discovery orders. While the Court recognizes that Robins has an absolute duty to protect its client's interests, and although the various steps of defense may appear innocuous in isolation, when viewed collectively and in tandem with the evidence contained in the Masters'

Report, the repeated delays and instances of nonproduction provide support for the application of the crime or fraud exception.

With respect to the conclusions to be drawn from the above evidence, Robins fears that the Court will engage in the reasoning that because Robins is accused of fraud and is defending against those accusations, the defense itself is a fraud and the privileges are lost. The Court agrees that such reasoning would be illogical. The plaintiffs' allegations, however, are much different than this characterization. Plaintiffs suggest that fraud is involved in Robins' defense of this litigation and that the fraud has extended to a cover up of initial acts of wrongdoing. The Court has not accepted the plaintiffs' premises as the Court's conclusions absent supporting evidence.

■ For purposes of ruling on the present motion, the Court examined a wealth of evidence concerning document production in these and other proceedings, studies conducted by Davis and others, reported Dalkon decisions, Robins' interpretations of the events and the Report of the Special Masters. In light of the history of document production in the instant and other actions, the pleadings submitted by both parties, the amicus brief and attachments, the reports of the Special Masters and the verdicts in numerous Dalkon Shield cases across the nation, the Court concludes that plaintiffs have made a *prima facie* showing that Robins "sought or obtained [legal advice] in order to enable or aid the commission or planning of a crime or tort," *see* K.S.A. § 60–426(b)(1), and that the allegations of Robins' attorneys' participation in the crime or fraud have some foundation in fact. *See Vargas*, 532 F.2d at 737.

Plaintiffs have established a *prima facie* case, for the purpose of the crime or fraud exception to the attorney-client privilege and the work product doctrine, that Robins: failed to adequately test the Dalkon Shield before marketing it; attempted to develop hard evidence which misrepresented the nature, quality, safety and efficacy of the Dalkon Shield; ignored the mounting evi-

dence against the Dalkon Shield, with knowledge of the potential harm caused by the product; relied upon invalid studies in an effort to refute or ignore the dangers potentially caused by the Dalkon Shield; and attempted, with the assistance of counsel, to devise strategies to cover up Robins' responsibilities and lessen its liability with respect to the Dalkon Shield.

The Court reemphasizes that this holding is limited to whether plaintiffs have made a threshold showing to sustain the crime or fraud exception to the attorney-client privilege and the work product doctrine. Once the threshold standard is met, evidence may be considered for discovery purposes if it will lead to other relevant evidence; the same standard does not apply to other stages of the proceedings. The Court's holding should not be read to take any position regarding whether Robins or Robins' counsel have perpetrated a crime or civil fraud; the inquiry was targeted solely to the discovery question of whether the plaintiffs established that the Court should invoke the crime or fraud exception for purposes of *in camera* inspection of documents by this Court, its personnel or Masters.

█ The final matter for the Court to determine is to what extent the attorney-client privilege and the work product doctrine have been abandoned. Neither the Tenth Circuit nor the Kansas Supreme Court has addressed the extent to which the privileges are lost once the exception is established. The Eighth Circuit has required that the documents containing the work product "bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In Re Murphy,* 560 F.2d 326, 338 (8th Cir.1977). In *In Re International Systems and Controls Corporation Securities Litigation,* 693 F.2d 1235, 1243 (5th Cir.1982), the Fifth Circuit held that the work product "must reasonably relate to the fraudulent activity." This Court believes that the *prima facie* showing of crime or fraud cannot open defendant's files completely or give plaintiffs carte blanche with respect to attorney-client communications. The Court holds that the memoranda in question must have a reasonable relation to the ongoing fraud to be discoverable under the crime or fraud exception.

█ Robins has submitted the Burke memoranda for *in camera* inspection. The Court finds that not only do the memoranda have a reasonable relation to the activities discussed above as evidence of crime or fraud, the memoranda actually bear a close relationship to the crime or fraud. The memoranda indicate that Robins attempted to selectively develop evidence with respect to the nature and quality of the Dalkon Shield and that Robins attempted to neutralize adverse publicity and comment. In addition, the documents demonstrate attorney knowledge of the activities which indicate the crime or fraud exception should apply.

Because the Court can foresee the question of application of the crime or fraud exception arising with respect to production of other documents involved in this litigation, the Court shall establish guidelines for future resolution of the issue. In order to prevent a wholesale production of Robins' files, the Court will apprise the plaintiffs and Robins of precisely which documents are under consideration for application of the crime or fraud exception. Robins shall be given, in each instance in which the question arises, the opportunity to submit written objections to application of the crime or fraud exception to particular batches of documents, just as they have been afforded such an opportunity in this case. The Court will not brook a reargument of the question of existence of the crime or fraud exception with each group of documents; the Court only envisions allowing Robins and plaintiffs to argue whether the various documents relate to one or more of the categories of crime or fraud the Court delineated in this Opinion.

Robins expresses apprehension that if the Court applies the crime or fraud exception, this Opinion will be misused by the plaintiffs' bar as evidence that Robins is guilty of the tort of fraud. The Court

shares Robins' concerns and, therefore, emphasizes the parameters of this Opinion with the following caveat. The Opinion is *not* a finding that Robins is guilty of perpetrating a crime or fraud; this is merely a discovery order which holds that plaintiffs have made out a *prima facie* case with respect to the application of the crime or fraud exception to the work product doctrine and the attorney-client privilege.

## IV. CERTIFICATION FOR INTERLOCUTORY APPEAL

■ At the hearing on the present motion for reconsideration, Robins orally moved for this Court, should it deny the motion for reconsideration, to certify for interlocutory appeal the question of the existence and application of the crime or fraud exception. Pursuant to 28 U.S.C. § 1292(b), Robins must demonstrate that there is a controlling question of law upon which there is substantial ground for difference of opinion and that an immediate interlocutory appeal would materially advance the ultimate termination of this case. *See Sullivan v. LaMunyon,* 572 F.Supp. 753, 758 (D.Kan.1983).

The criterion that there be substantial ground for difference of opinion is not satisfied in the instant case. All the circuits that have considered the issue have determined that a crime or fraud exception to the attorney-client privilege and the work product doctrine exists. *See, e.g., In Re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032 (2nd Cir.1984); *In Re Grand Jury Proceedings (Vargas),* 723 F.2d 1461 (10th Cir.1983); *In Re International Systems and Controls Corporation Securities Litigation,* 693 F.2d 1235 (5th Cir.1982). Robins suggested at oral argument that it is inappropriate to apply the crime or fraud exception outside the context of grand jury proceedings. The statute in question contains no such limitation, nor have the cases imposed such a restriction. *See* K.S.A. § 60–426; *see, e.g., Pritchard-Keang Nam Corp. v. Jaworski,* 751 F.2d 277 (8th Cir.1984); *American Standard, Inc. v. Bendix Corp.,* 80

F.R.D. 706 (W.D.Mo.1978). No basis for appeal has been presented other than a claim that this Court's ruling was wrong.

Independently, the Court is not persuaded that certification of the question for interlocutory appeal would materially advance the ultimate termination of this litigation. No unusual circumstances exist which would justify a departure from the ordinary rule of postponing judicial review until after the entry of a final judgment. *See* Wright, Miller, Cooper & Gressman, 16 *Federal Practice and Procedure: Jurisdiction* § 3930 (1977). The case is already nine years old. An interlocutory appeal would serve to delay, not advance, the ultimate termination of this litigation.

Finally, this Court has in front of it Robins' request to extend the stay the Court entered on April 22, 1985, Dk. no. 782, which held in abeyance the implementation of this Court's Order to turn the Burke memoranda over to plaintiffs. Because of this Court's ruling on the present motion for reconsideration and on the oral motion for certification for interlocutory appeal, the Court shall deny Robins' request for an extension of the stay and shall lift the current stay concerning dissemination of the Burke memoranda to plaintiffs.

IT IS THEREFORE ORDERED that Robins' motion for reconsideration is hereby denied. This Court's Order of April 8, 1985, however, shall be withdrawn.

IT IS FURTHER ORDERED that plaintiffs' motion to incorporate the *Goss* Order into the instant proceedings is hereby denied.

IT IS FURTHER ORDERED that Robins' motion for certification of the crime or fraud exception question for interlocutory appeal is hereby denied.

IT IS FURTHER ORDERED that Robins' motion for extension of the stay of operation of this Court' Order relating to the crime or fraud exception is hereby denied, the stay is vacated, and the Clerk of the Court is directed to transmit copies of the Burke memoranda to the plaintiffs.