### In re NATIONAL MORTGAGE EQUITY CORPORATION MORTGAGE POOL CERTIFICATES LITIGATION.

#### No. MDL 647 AWT(Gx).

United States District Court,
C.D. California.

June 17, 1987.

298

See also 636 F.Supp. 1138.

Alan D. Bersin, Anne H. Egerton, Michael E. Soloff, Felicia A. Marcus, Munger, Tolles & Olson, Los Angeles, Cal., for Bank of America NT & SA.

Charles C. Wehner, Rodney M. Perlman, Robert F. Hinton, Karen A. Rooney, Wehner and Perlman, Los Angeles, Cal., for National Mortg. Equity Corp.

Carla M. Woehrle, Talcott, Lightfoot, Vandevelde, Woehrle & Sadowsky, Los Angeles, Cal., for Ben Adelman.

## ORDER OF RECOMMITTAL TO MAGISTRATE

TASHIMA, District Judge.

This is a motion for reconsideration and review of a magistrate's discovery order, reviewable under the "clearly erroneous or contrary to law" statutory standard. 28 U.S.C. § 636(b)(1)(A).

## I.  BACKGROUND

Bank of America (the "Bank") sought from the magistrate an order: (1) compelling production of all documents prepared between December 17, 1982 and November 28, 1984,[1] requested by the Bank under F.R.Civ.P. 34 or by subpoenas duces tecum to Ben Adelman, Donald Lescoulie, Lord, Bissell & Brook and Leslie Michael for which National Mortgage Equity Corporation ("NMEC"), David Feldman, Adelman and Lescoulie have asserted the attorney-client privilege or work-product protection;[2] and (2) providing that neither NMEC and Feldman nor their attorneys may assert the attorney-client privilege or work-product protection in response to questions posed at their depositions.  The Bank contends that the attorney-client privilege and work-product doctrine do not apply to these communications because they were made in furtherance of fraud perpetrated by NMEC and Feldman.

In his order of April 27, 1987, the magistrate denied the Bank's motion in its entirety, ruling that without a showing by the Bank that a *particular* attorney-client communication or piece of work product "(or a homogenous group thereof) is reasonably related to, and is within the scope of, [the Bank's] prima facie showing of fraud by the Defendants," the crime-fraud exception does not abrogate the attorney-client privilege or work-product protection.[3] Additionally, the magistrate ruled that "absent a prima facie showing that Mr. Adelman's work-product protection has been wholly defeated by *his* alleged participation in a crime or fraud, or that the entire NMEC enterprise during the period in which the exception is claimed was wholly devoted to fraudulent activities," the crime

1. This is the period of time between Advance Mortgage Corporation's resignation as loan servicer because of alleged improprieties in the program and the Bank's assumption of the loan servicing duties from National Mortgage Equity Corporation.

2. Pursuant to a pending settlement agreement between the Bank and Lord, Bissell & Brook, Leslie Michael and Kay Aevermann (the "Lord, Bissell defendants"), the Bank withdrew that part of its motion that sought production of documents in the Lord, Bissell defendants' possession for which they have asserted work-product protection on their privilege log.

3. Although the magistrate's order is somewhat ambiguous on these issues, it appears that he made no finding on (i) whether defendants have shown that the documents at issue fall within the attorney-client privilege and/or work-product protection, or (ii) whether the Bank made a prima facie showing of fraud.  (On the latter issue, *see* n. 6, *infra* and accompanying text.)

fraud exception does not entitle the Bank to discovery of documents for which Adelman, an attorney, has asserted work-product protection on his own behalf.

## II. DISCUSSION

### A. *The Attorney-Client Privilege*

It is well-established that "the attorney-client privilege does not protect communications that further a crime or fraud." *United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir.1987).[4] The Bank takes issue with the magistrate's ruling as to the showing it must make to overcome the privilege. The process has not been defined by the Ninth Circuit.

The magistrate relied on *United States v. King*, 536 F.Supp. 253, 261 (C.D.Cal. 1982), in noting that *ultimately* to defeat the privilege "a prima facie case must be established that the communication in question was indeed in furtherance of a crime or fraud." However, this statement is merely a shorthand expression of what is in essence a two-part process.[5]

To invoke the crime-fraud exception, the party seeking disclosure must first "make out a prima facie case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity." [6] *United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977). This prima facie case must be es-

tablished through evidence independent of the communications sought to be disclosed. *Zolin*, 809 F.2d at 1418. However, for the purpose of abrogating the attorney-client privilege, the party seeking disclosure need not show that the attorney knowingly participated in the crime or fraud. *Id.*

If the party seeking disclosure successfully establishes this prima facie case, it must *then* be determined whether the particular communications sought were in furtherance of the crime or fraud. Unless the prima facie case established is so broad that *all* communications can be considered in furtherance of the crime or fraud, the Court, a magistrate or master must conduct an *in camera* review of the documents or communications to determine whether they are reasonably related to, or within the scope of, the prima facie showing of the criminal act or fraud.[7] *See In re A.H. Robins Co.*, 107 F.R.D. 2, 15 (D.Kan. 1985). Even the court in *King*, which the magistrate quoted in reaching his decision, recognized that at times *in camera* inspection "should be made in order to determine that the communication was in furtherance of a crime or fraud." *King*, 536 F.Supp. at 262.

The magistrate's ruling requires the Bank to prove that particular communications were made in furtherance of the acts

---

**4.** The crime-fraud exception has been discussed extensively in the context of grand jury investigations, but it also applies in civil litigation. *See In re A.H. Robins Co.*, 107 F.R.D. 2 (D.Kan. 1985). NMEC and Feldman contend that the exception may only be asserted by the victim of the crime or fraud. This argument is without merit. *See In re Berkley & Co.*, 629 F.2d 548, 554–55 (8th Cir.1980).

**5.** Use of the shorthand expression was appropriate there because in *King* the assertedly privileged communication was actually before the court, and the court made an *in camera* examination of it. *Id.*

**6.** The most common formulation of the requirement of a prima facie case is "evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." *In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985).

**7.** Courts have differed on the degree of relatedness required for the application of the exception. *See In re Sealed Case*, 676 F.2d at 815 n. 91 (collecting cases). As Judge Wright noted in advocating the "reasonable relationship" standard, "The exact formulation of a 'test' for relatedness is less important than an understanding of what the test must accomplish: easy differentiation between material for which the law should not furnish the protections of a privilege and material for which a privilege should be respected." *Id.* (Wright, J., in a section of the opinion not joined by the other two members of the panel). Given "the special difficulties of extensive *in camera* inspection," the "reasonable relationship" standard seems to be the most practical. *Id.* at 815. *See also In re A.H. Robins Co.*, 107 F.2d at 15 (noting the various standards and adopting the "reasonable relation" standard).

of fraud without knowing the contents of the communications. As the Bank points out, the privilege logs contain only minimal descriptions of the communications. Moreover, the logs do not even indicate which documents correspond to the numbered provisions of the Bank's Rule 34 requests, which would provide the Bank's only opportunity to single out "batches" of documents that were conceivably in furtherance of the fraud. The only course the Bank has is to make a prima facie showing of NMEC and Feldman's use of the attorneys in order to promote future or ongoing fraud and then depend on the magistrate to review the documents *in camera* to see if they are reasonably related to the instances of fraud. The magistrate's order, in collapsing this two-part process into a single step, is contrary to law.

### B. *Attorney Work Product*

■ NMEC, Feldman and Adelman, who was one of NMEC and Feldman's attorneys and who is also a named defendant in this action, have each asserted work-product protection for certain documents. Unlike the attorney-client privilege, which is held only by the client (although the attorney may assert it on behalf of the client), work-product protection may be claimed by both the client and the attorney. *See In re Doe*, 662 F.2d 1073, 1079 (4th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982); *In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3d Cir.1979).

■ The crime-fraud exception may be used to abrogate work-product protection as well as the attorney-client privilege. *See, e.g., In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir.1986) (collecting cases). Courts generally follow the same two-part approach used in applying the exception to the attorney-client privilege. *See id.* at 168–69; *In re A.H. Robins Co.*, 107 F.R.D. at 15. However, the magistrate ruled, as he did with the attorney-client privilege, that the Bank had failed to show that *any particular piece* of work product was reasonably linked to a prima facie showing of fraud. This ground for the

magistrate's decision is contrary to law for the reasons discussed in Section II.A.

The magistrate also ruled that the crime-fraud exception did not permit discovery of attorney Adelman's work product because he has asserted the doctrine on his own behalf and the Bank has not shown that he participated in the fraud. This ground of the magistrate's ruling, while essentially correct, must be modified.

■ It is clear that a *client* cannot assert work-product protection for any kind of work product when it has been produced in furtherance of the *client's* crime or fraud. *See In re Grand Jury Proceedings*, 604 F.2d at 802. In that posture, it is irrelevant that the attorney is innocent or unaware of the fraud; the *client* is simply not deserving of the work-product protection. *See In re Special Sept. 1978 Grand Jury*, 640 F.2d 49, 63 (7th Cir.1980).

■ However, when, as here, the *attorney* asserts the work-product doctrine, one confronts competing policy considerations. The work-product doctrine exists not only to assist the client in obtaining legal advice, but also to protect the lawyer's interest in privacy during preparation for litigation. *See Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *In re Special Sept. 1978 Grand Jury*, 640 F.2d at 62. Thus, as the magistrate correctly noted, an innocent attorney may assert work-product protection when the client could not because of his intent to use the work product to further his crime or fraud. *See In re Sealed Case*, 676 F.2d 793, 812 (D.C.Cir.1982); *In re Grand Jury Proceedings*, 604 F.2d at 801 n. 4. Yet this policy of protecting an attorney's privacy is in conflict with the policy against shielding client fraud from discovery. The dishonest client benefits from the innocent attorney's assertion of the work-product doctrine. This conflict, however, can be partially eased by taking different approaches to discovery of work product, depending on the kind of work product at issue.

■ Traditionally, an attorney's privacy interest in her work product receives

different levels of protection depending on whether it is "fact" or "opinion" work product. "Fact" work product, the written or oral information collected by the attorney and recorded verbatim or in summary form, receives far less protection than "opinion" work product, an attorney's mental impressions, conclusions, opinions and legal theories. *See Hickman*, 329 U.S. at 510–11, 67 S.Ct. at 393; F.R.Civ.P. 26(b)(3). Attorney-client communications frequently merge into fact work product. *See In re Grand Jury Proceedings*, 604 F.2d at 802. When a client could not assert the attorney-client privilege or work-product protection because of his fraudulent or criminal intent, he should not be able to benefit from an innocent attorney's assertion of work-product protection for essentially the same communication. *See In re Special Sept. 1978 Grand Jury*, 640 F.2d at 63. These considerations, coupled with the rule that fact work product is generally more prone to discovery, mandates that fact work product must be produced if it is found within the crime-fraud exception, even if the attorney asserting the work-product protection was unaware of the client's wrongdoing.

▮ However, when an attorney asserts protection for his opinion work product, which generally receives a higher degree of protection from discovery, not even "the misfortune of representing a fraudulent client" can warrant an "invasion of the attorney's necessary privacy in his work." *Id.* Nevertheless, when there is a prima facie showing that the attorney had knowledge of or participated in the crime or fraud, there is no reason to protect even opinion work product. "In those rare instances, none of the public policies advanced in support of the privilege would be served if an attorney who committed a crime or fraud could shield himself from prosecution or litigation because he asserted the work product doctrine." *In re Antitrust Grand Jury*, 805 F.2d at 164.

## III. CONCLUSION AND ORDER
IT IS ORDERED that:

1. The magistrate's order, insofar as it requires the Bank to make a prima facie showing that particular communications or work-product materials were reasonably related to a crime or fraud in order to invoke the crime-fraud exception to the attorney-client privilege and the work-product doctrine, is vacated.

2. Pursuant to 28 U.S.C. § 636(b)(1), the Bank's crime-fraud motion is recommitted to the magistrate with the following instructions:

(a) The magistrate must first determine whether defendants have carried their burden of showing that the documents in question fall within either the attorney-client privilege or work-product protection;

(b) Assuming that the magistrate finds that the attorney-client privilege and/or work-product protection attach to any of these communications· or documents, the magistrate must then determine whether the Bank has established a prima facie case that the attorneys were retained in order to promote intended or continuing criminal or fraudulent activity, and if so, delineate its scope;

(c) The magistrate should then conduct an *in camera* review to determine whether the documents for which the attorney-client privilege or work-product protection is claimed are reasonably related to the fraud or crime. If so, then the magistrate should compel discovery of such related communications, except to the extent that they represent opinion work product. The Bank may have access to opinion work product only if the Bank can make a further prima facie showing that the attorney was aware of or participated in the fraud or crime.

3. The Bank has also sought an order prohibiting the defendants from asserting the attorney-client privilege or work-product protection at their depositions. If the magistrate finds a prima facie case of fraud or crime, he may fashion such an order consistent with this order.