**Jacqueline CHESHER, et al., Plaintiffs,**

v.

**Tom NEYER, Jr., et al., Defendants.**

**No. 1:01–CV–00566.**

United States District Court,
S.D. Ohio,
Western Division.

Jan. 27, 2004.

Renee Ann Infante, Stanley Morris Chesley, Terrence Lee Goodman, Paul M. De Marco, Waite Schneider Bayless & Chesley

Co LPA, Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, for Plaintiffs.

Jamie M. Ramsey, Louis Francis Gilligan, Keating Muething & Klekamp, Stephen James Patsfall, Stephen Michael Yeager, Patsfall Yeager & Pflum LLC, Marc David Mezibov, Mezibov & Jenkins, LLP, Michael N. Budelsky, Sirkin Pinales Mezibov & Schwartz, Glenn Virgil Whitaker, Michael L. Rich, Vorys Sater Seymour & Pease, Lawrence Edward Barbiere, Schroeder Mundrell Barbiere & Powers, Cincinnati, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on the Magistrate Judge's October 23, 2003 Order (doc. 125), Defendants' Objection (doc. 130), and Plaintiffs' Response (doc. 134). The Court will also consider the Magistrate Judge's October 28, 2003 Order (doc. 128), Plaintiffs' Objection (doc. 135), Defendant Parrott's Response in Opposition (doc. 139), and the Response in Opposition filed by Michael K. Allen, Brian E. Hurley, Thomas P. Longano, and David T. Stevenson (doc. 140). Finally, the Court will consider the Defendants' Unopposed Joint Motion for Extension of Time to Respond to Plaintiffs' Motion for Approval of Class Notice, And For Trial Scheduling Order, Bellwether Trial, Summary Jury Trial, and Status Conference (doc. 148).

## I. The Magistrate Judge's October 23, 2003 Order (doc. 125).

The Magistrate Judge's October 23, 2003 Order granted Plaintiffs' Motion to Compel drafts or non-final versions of a 1999 opinion letter (hereinafter, "Opinion Letter"), from the Hamilton County Prosecutor's Office [1] to Dr. Parrott (doc. 125). The Magistrate Judge found that the Plaintiffs' document request number twelve clearly encompassed

1. The Opinion Letter was drafted by David Stevenson and signed by Michael Allen.

2. Such document request states in full: "All formal and informal opinions issued by any person, advisory body, or authoritative body regarding

drafts of the letter (*Id.*).[2] The Magistrate Judge further found that rather than objecting to the request the County Defendants denied having responsive documents (*Id.*). Having failed to object or motion for a protective order, the Magistrate Judge found that Defendants waived any objection, and ordered Defendants to produce the requested documents, and reimburse Plaintiffs' fees and expenses pursuant to Fed.R.Civ.P. 37(d).

### 1. Defendants' Objections

Defendants objected to the Magistrate Judge's Order arguing that the requested documents do not exist, that Plaintiffs' Motion to Compel was moot, and that even if such documents did exist, the Board of Commissioners cannot be held responsible for responding to discovery requests on behalf of the Prosecutor's Office (doc. 130). Defendants argue that Plaintiffs' Motion was moot based on the fact that Plaintiffs' Counsel orally indicated as much in light of Dr. Parrot's production of the final version of the Opinion Letter (*Id.*). Defendants argue that the letter Defendants' counsel drafted confirming their understanding did not provide that the motion was moot only insofar as it relates to Dr. Parrott, so that the motion in its entirety was moot (*Id.*). Defendants argue that Plaintiffs had not requested the drafts until five months after the production of the Opinion Letter by Dr. Parrott, and should not be heard to complain now (*Id.*). Defendants argue that because the Counsel for the County Defendants does not represent the non-party Prosecutor's Office, the County Defendants' response to Plaintiffs' discovery request was accurate (*Id.*). County Defendants argue that they have no authority or responsibility for responding to discovery on behalf of the non-party Prosecutor's Office (*Id.*). Defendants argue that Plaintiffs must direct any discovery requests to the Prosecutor's Office itself (*Id.*). Defendants argue rhetorically that if the County Defendants must respond on behalf of the

accessing, photographing, filming, and/or videotaping corpses in the morgue" (doc. 125). Plaintiffs also defined the word "document" as including "drafts or non-final versions." *Id.*

Prosecutor's Office, they should have to respond on behalf of all county offices, and possibly even the Common Pleas Court judge who presided over the criminal action against Tobias and Condon (*Id.*).

Defendants next argue that Plaintiffs' Counsel has previously issued subpoenas to Dave Stevenson of the Prosecutor's Office as a non-party (*Id.*). Consequently, Defendants argue, Plaintiffs have recognized the Prosecutor's Office as a non-party and should not maintain that the Prosecutor's Office was required to respond to discovery requests issued to the County (*Id.*). Similarly, in coordinating the depositions of Michael Allen, Brian Hurley, and Thomas Longano in this matter, Defendants aver that Plaintiffs' counsel worked directly with the Prosecutor's Office and later its special counsel (*Id.*). Defendants further argue that if Counsel for the County represents the Prosecutor's Office, Plaintiffs' Counsel has committed ethical violations by speaking directly to the Prosecutor's Office on numerous occasions (*Id.*).

County Defendants posit that they are unable to waive the attorney/client privilege enjoyed by the coroner and his legal counsel, as such privilege belongs to the coroner and only he may waive it (*Id.*). Defendants aver that their original response that they had no responsive documents within their custody or control remains truthful and accurate because any such documents would be in the possession of the Prosecutor's Office, which is not a named Defendant (*Id.*). Accordingly, Defendants argue that the Magistrate Judge's award of attorney fees and expenses to Plaintiffs is unjust (*Id.*).

### 2. Plaintiffs' Response

Plaintiffs respond that Defendants have misread the Magistrate Judge's Order, assuming that such Order came about because Defendants did not respond to Plaintiffs' Motion to Compel (doc. 134). Plaintiffs argue that actually such order is grounded in the Magistrate Judge's finding that Defendants did not respond properly to Plaintiffs' document request number twelve (*Id.*). Plaintiffs submit, however, that the portion of the Magistrate Judge's Order requiring Defendants to pay attorney fees and costs should

not be enforced based on Defendants' counsel's good faith belief that the Prosecutor's Office is not part of the County (*Id.*).

Plaintiffs argue that the Magistrate Judge clearly and correctly concluded that documents in the possession of the Prosecutor's Office are in the possession of the County (*Id.*). Plaintiffs posit that the County remains a Defendant in this case, and in Plaintiffs' First Set of Interrogatories, the County was defined to include its "employees and/or agents, and/or other persons acting or purporting to act on [behalf of the County]" (*Id.*). Plaintiffs request that the Court (1) uphold that part of the Magistrate Judge's order appearing to hold that the documents in possession of the Prosecutor's Office are considered to be in the possession of the County, (2) to hold that henceforth all responsive documents in the possession of the Prosecutor's Office are to be considered in the possession of the County and are to produced accordingly, absent legitimate privilege, and (3) to require that, when documents in the Prosecutor's Office are withheld based on an asserted privilege, that a privilege log shall be provided (*Id.*).

### 3. Analysis

■ Having reviewed the Magistrate Judge's Order and the parties' respective arguments, the Court finds well-taken the position that the drafts of the Opinion Letter fall within the scope of Plaintiffs' document requests. The Court agrees that the imposition of attorneys fees and costs is unnecessary in this case as Defense counsel acted in a good faith understanding that the documents were not within the possession of the County. The Court does not find erroneous the Magistrate Judge's finding that Defendant Parrot waived any attorney-client privilege associated with the drafts when he produced the final version of the Opinion Letter to Plaintiffs. Consequently, no privilege attached to the documents, and as Defendants failed to raise an objection or motion for a protective order, the Magistrate Judge properly found that Defendants must produce the documents in question.

■ The Court does not find well-taken Defendants' argument that Plaintiffs' Motion to Compel was moot after the production of the final version of the Opinion Letter. The document requests encompass drafts of the letter, and such drafts were apparently never clearly the subject of discussions between the parties. Though Defendants make much of the fact that they drafted a letter confirming their understanding that Plaintiffs' Motion to Compel was moot, such letter can be interpreted as ambiguous in failing to specify that more than the final version of the Opinion Letter was at issue. Such ambiguity can be construed against the drafting party. Although Plaintiffs could have acted more promptly in expressing their position, the delay of a few months does not prejudice Defendants.

■ Defendants make much of the fact that their Counsel does not represent the Prosecutor's Office, and that they have no authority or responsibility for responding to discovery on behalf of the Prosecutor's Office. The Court does not find clearly erroneous the Magistrate Judge's implicit ruling to the contrary. As Defendants argue, the Prosecutor's Office does indeed have a specific mandate as a creature of statute. However, such mandate does not change the fact that the Office is an entity of Hamilton County government, nor obviate the special role of the Prosecutor's Office in providing advice to the Coroner in this case. Hamilton County is a Defendant in this action, and it is not unreasonable to expect its entities and agencies that have a relationship to the action to respond to particular discovery requests. Although Defendants argue that if they must respond on behalf of the Prosecutor's Office, they should have to respond on behalf of all county offices, and perhaps even the Common Pleas Judge who presided over the criminal action, such argument is overblown. There is no evidence that any relevant discovery exists in other offices, and in any event, Plaintiffs have not been requesting discovery from such offices. Plaintiffs reasonably seek all formal or non-formal opinions from persons acting or purporting to act on behalf of the County, its Commissioners, and its Coroner. The County Prosecutor's Office acted on behalf of the Coroner in

providing the Coroner aid with his legal question. As such, the Prosecutor's Office falls squarely within the scope of Plaintiffs' discovery request. The County may properly ask its legal counsel, the Prosecutor's Office in this instance, to provide the County with all responsive documents, which in turn, the County may produce to Plaintiffs. Defendants' arguments to the contrary are not well-taken. Accordingly, the Court affirms the Magistrate Judge's Order granting Plaintiffs' Motion to Compel, while overruling the Magistrate Judge's Order that Defendants pay Plaintiffs' attorney fees and expenses associated with the filing of such motion (doc. 125).

**B. The Magistrate Judge's October 28, 2003 Order (doc. 128).**

The Magistrate Judge's October 28, 2003 Order granted in part non-party Hamilton County Prosecuting Attorneys Michael Allen, Thomas Longano, Brian Hurley, and David Stevenson's Motion to Quash subpoenas and/or for a Protective Order (doc. 128). The Magistrate Judge found that the deposition of Attorney Stevenson with respect to the Opinion Letter should not be quashed because any privilege associated with such letter was waived by Dr. Parrott when Dr. Parrott produced the letter in discovery (*Id.*). However, the Magistrate Judge found that the balance of Plaintiffs' subpoenas should be quashed (*Id.*). In so concluding, the Magistrate Judge applied the three-factor test of *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986), under which in order to depose opposing counsel, a party must demonstrate that (1) no other means exists to obtain the information other than to depose opposing counsel; (2) the information is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case (*Id.*). The Magistrate Judge found that Plaintiffs have failed to satisfy the *Shelton* factors in order to depose Longano, Hurley, and Allen (*Id.*).

As for Longano, the Prosecutor in the underlying criminal cases, the Magistrate Judge found Plaintiffs should not be permitted a deposition, because one of those cases remains on appeal, and in any event, Longa-

no should be shielded from deposition based on the work product privilege (*Id.*). The Magistrate Judge similarly found that Plaintiffs should not be permitted to depose Brian Hurley concerning the decision to defend Tobias in this civil action and the terms upon which such a defense would go forward (*Id.*). The Magistrate Judge found that allowing Hurley to testify as to his mental impressions regarding such negotiations with Tobias on behalf of the County would violate the attorney/client privilege (*Id.*). The Magistrate Judge reasoned that Tobias has already been deposed with respect to the May 2003 Sunday meeting at which such negotiations took place (*Id.*). Finally, the Magistrate Judge found that Plaintiffs' effort to depose Allen concerning his decision not to appeal the Tobias conviction should be precluded based on the attorney/client privilege and prosecutorial immunity (*Id.*). As for Plaintiffs' effort to depose Allen concerning the structure of the Prosecutor's Office with respect to the management and investigative structure involved in the investigation of another County Office, the Magistrate Judge found such request likely to fall within the scope of Fed. R.Civ.P. 30(b)(6) (*Id.*).

The Magistrate Judge rejected Plaintiffs' argument that the evidence supports that the four attorneys were involved in a cover-up and therefore each should be subject to deposition on that subject (*Id.*). The Magistrate Judge noted that Plaintiffs justify their request to depose the non-party attorneys on investigations of the morgue photographs because any investigation would be an unprivileged administrative or managerial action, but rejected such argument because none of the non-party attorneys conducted investigations into the matter (*Id.*).

### 1. Plaintiffs' Objections

Plaintiffs objected to the Magistrate Judge's Order arguing that the Magistrate Judge erroneously applied *Shelton* to the factual situation at hand, and erroneously appraises the evidence of cover-up by construing it in the light most favorable to those resisting discovery (doc. 135). Plaintiffs argue the Eighth Circuit, which decided *Shelton*, recently held in *Pamida, Inc. v. E.S.*

*Originals, Inc.,* 281 F.3d 726, 730–31 (8th Cir.2002), that *Shelton* was not intended to preclude a party in a case from deposing attorneys regarding their knowledge and involvement in the events of a prior concluded case (*Id.*). Accordingly, Plaintiffs posit, to the extent Longano, Hurley, and Allen possess relevant information obtained in the criminal case, which ended September 10, 2003, the Magistrate Judge's Order quashing the entirety of Plaintiffs' subpoenas cannot stand (*Id.*).

Plaintiffs argue that the discovery they seek is permissible because they are pursuing evidence that prosecutors participated in attempts to cover up County wrongdoing in order to protect the County from the civil liability that is at stake in this action (*Id.*). Notwithstanding *Shelton* and any claimed privileges, Plaintiffs argue they are entitled to elicit information from these attorneys about the County's investigation for signs of a cover up (*Id.*) citing *Combs v. Wilkinson,* 315 F.3d 548, 554–556 (6th Cir.2002). Relying upon *Reed v. Baxter,* 134 F.3d 351 (6th Cir.1998) and *Spurlock v. Thompson,* 330 F.3d 791 (6th Cir.2003), Plaintiffs argue that they are entitled to know the details of Hurley's "secret Sunday interrogation session" with Tobias, given the evidence that Hurley attempted to use the authority of the Prosecutor's Office to intimidate Dr. Tobias or influence his affidavit and testimony (*Id.*). Similarly, Plaintiffs argue that they are entitled to full discovery from Allen concerning the circumstances and content of the Opinion Letter to Dr. Parrott (*Id.*) citing *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 278 F.3d 621 (6th Cir.2002).

As for their allegations of a cover-up, Plaintiffs assert that Commissioner Portune's June 21, 2002 letter to Judge Nadel indicates that the Commissioner understood that more people were implicated in Condon's activities than merely Condon and Tobias (*Id.*). Plaintiffs aver that a sworn statement from Condon's wife indicates that Dr. Gary Utz, a morgue employee and Defendant in this case, revealed that prosecutors came into the Morgue and "openly threatened people" as to what to say and how to testify (*Id.*). Plaintiffs proffer an audiotape made by Dr. Utz

showing that other morgue employees were fully aware of Condon's photography, and indicate that Defendants delayed production of the Opinion Letter for more than a year (*Id.*). Plaintiffs indicate that Dr. Tobias indicated in his deposition that Defendants Rhonda Gros and Dr. Carl Parrott had told him he was being suspended because "we need to protect the County" (*Id.*). Defendant Pfalzgraf testified that Parrott told morgue employees that his "hands were tied" and that Parrott told Pfalzgraf that Parrott meant he was doing what the prosecutors told him to do (*Id.*). Plaintiffs further aver that Tobias testified that Parrott knew about Condon's art books of corpse photography from the very beginning, before Condon took any photographs at the Hamilton County Morgue (*Id.*).

Plaintiffs argue that the actions and involvement of the Prosecutor's Office in this litigation have left enough suspicious fingerprints to justify Plaintiffs' requested discovery (*Id.*). Plaintiffs posit that the discovery they seek is relevant to their class-wide contention that there was a cover-up that "shocks the conscience," violating their substantive due process rights under 42 U.S.C. § 1983 (*Id.*).

### 2. The Non-party Prosecuting Attorneys' Response

The Non-party Prosecuting Attorneys [3] (hereinafter "Non-party Attorneys") respond that the Magistrate Judge's decision is not clearly erroneous or contrary to law, and as such, under Fed.R.Civ.P. 72(a), such decision should rest unchanged by this Court (doc. 140). The Non-party Attorneys further argue that the Magistrate Judge did not clearly err in holding that *Shelton* controls in the instant discovery dispute (*Id.*). Plaintiffs incorrectly cite to *Pamida*, 281 F.3d 726 (8th Cir.2002), argue Defendants, as the proposition in that case is that *Shelton* does not apply to counsel in closed cases (*Id.*). The Non-party Attorneys posit that Plaintiffs seek information about an alleged cover-up in this case, which is obviously not closed (*Id.*). Moreover, the Non-party Attorneys argue, the criminal case is not closed either, as

Thomas Condon filed an appeal of the trial court's decision denying him a new trial (*Id.*).

The Non-party Attorneys next argue that Plaintiffs have failed to provide any specifics regarding the need for their depositions (*Id.*). They argue first that Plaintiffs' request to depose Allen about the Opinion Letter is cumulative, as Plaintiffs already have been granted the opportunity to depose Stevenson on the subject (*Id.*). They argue that any deposition of Allen concerning the decision not to appeal the Tobias decision should be precluded on the basis of attorney/client privilege and absolute prosecutorial immunity (*Id.*). They posit that Tobias' statement that "no overt threats" were made against him means that no promises or offers were made in conjunction with the decision not to appeal, and provide an affidavit from Tobias' counsel indicating as much (*Id.*).

The Non-party Attorneys argue second that Plaintiffs have offered no specifics as to their anticipated questioning of Longano (*Id.*). They argue that Longano's prosecution of the criminal matter is covered by the work-product privilege (*Id.*).

Third, the Non-party Attorneys argue that there is no basis to depose Hurley about the "secret" Sunday meeting, as Tobias' own counsel has explained the negotiations were completely proper (*Id.*). They argue that requiring Hurley to testify as to his mental impressions regarding this litigation would violate the attorney/client privilege and work product doctrine (*Id.*). Moreover, they argue, Plaintiffs have already had the opportunity to depose Tobias regarding the Sunday meeting (*Id.*).

Fourth, the Non-party Attorneys argue that there is no basis in the evidence that supports Plaintiffs' "cover-up theory" (*Id.*). They argue the Court has already dismissed the conspiracy count, that Plaintiffs have already deposed all the other actors in the alleged cover-up, that the cover-up makes no sense, and that the cover-up allegations lead nowhere (*Id.*). They posit that Dr. Parrott and Rhonda Gros' statements that "we have to protect the County" and that the Prosecutor's Office informed them of such duty is not

---

3.  Allen, Hurley, Longano, and Stevenson.

an indication of a sinister conspiracy, because every attorney is charged to protect his or her client (*Id.*). They argue that the Opinion Letter concerns the filming of a training video for coroners depicting a forensic autopsy, and is an entirely different matter from the allegations of Plaintiffs' Complaint (*Id.*). They argue that Commissioner Portune has in no way indicated in his deposition testimony that the Prosecutor's Office was involved in a cover-up (*Id.*). Similarly, they argue that Plaintiffs fail to address Dr. Utz' deposition testimony in which Utz stated that he never said that members of the Prosecutor's Office "openly threatened" people, and that Utz himself never felt intimidated by the Prosecutor's Office (*Id.*). The Non-party Attorneys summarize that Plaintiffs are merely distorting the evidence in the record in order to justify discovery of privileged information (*Id.*). They conclude that the subpoenas are oppressive, harassing, and designed to interfere with the Hamilton County Prosecutor's Office representation of the County (*Id.*).

### 3. Parrott's Response

Defendant Parrott filed his Response to Plaintiffs' Objection on December 15, 2003, arguing that Plaintiffs' claims of a cover-up lack merit (doc. 139). Parrott argues that the Court has already dismissed the conspiracy claims in this case, that Defendants' objections to discovery do not constitute a cover-up, and that Plaintiffs have cited to no legal authority for their desired intrusion into information protected by the work product and attorney/client privileges (*Id.*). Parrott argues that it is absurd to suggest that it would be improper to articulate a need to protect the County, as this is the responsibility of all County officials (*Id.*). Parrott states that Tobias was only suspended after Tobias was identified as a suspect by the police and after Tobias had refused to speak to the police (*Id.*). Parrott argues that the issue of whether he had seen Condon's art book at the first meeting was discussed in open court during the criminal trial of this action, and such issue was in on way covered up (*Id.*).

### 4. Analysis

The Court finds no clear error in the Magistrate Judge's decision to allow Mr. Stevenson's deposition to proceed. As such, the Court affirms the Magistrate Judge's decision as to Stevenson.

■ However, the Court finds problematic the Magistrate Judge's finding that the evidence does not support a cover-up theory, so that Plaintiffs are not entitled to depositions on the subject. Although the Court, as explained below, DOES NOT FIND that there was a cover-up, the Court finds that the evidence can be reasonably viewed to support such a THEORY. The Court finds well-taken Plaintiffs' argument that the Magistrate Judge erroneously appraised the evidence of cover-up, either disregarding Plaintiffs' evidence altogether or construing it in the light most favorable to those resisting discovery. The Magistrate Judge's approach is inconsistent with the application of the crime/fraud exception in the Sixth Circuit. *United States v. Collis,* 128 F.3d 313, 321 (6th Cir.1997) (To defeat privilege a party must make a showing that a sufficiently serious crime or fraud has occurred and some relationship between the communication at issue and the *prima facie* violation. To satisfy its *prima facie* showing, the evidence must be such that a prudent person would have a reasonable basis to suspect the perpetration of a crime or fraud). Plaintiffs make a convincing argument that the facts of this case are analogous to those in *Greenwood v. State of New York,* 84 Civ. 9143(PKL), 1992 WL 203859, 1992 U.S. Dist. LEXIS 11954 (S.D.N.Y. August 10, 1992) in which the court found evidence that a doctor was singled out as a scapegoat in order to cover-up the responsibility of others for tortious actions. In *Greenwood,* the court found that such a cover-up supported the application of the crime-fraud exception to the attorney/client privilege. 1992 WL 203859 at *9, 1992 U.S. Dist. LEXIS 11954 at *20–21. In the case at hand, Plaintiffs have proffered evidence tending to support the theory that Tobias was singled out as a scapegoat while others, including the Coroner, knew about Condon's activity and shared responsibility for it. The Court finds that the alleged cover-up is a

sufficiently serious fraud related to hiding the potential involvement of the Coroner and others, and thus limiting the liability of the County. The sworn statement of Condon's wife could be viewed by a prudent person as reasonable evidence that the Prosecutor's Office had a hand in hiding the extent of culpability of those in the Coroner's Office. Although Dr. Utz denies having made any statements that prosecutors "openly threatened people" as to what to say and how to testify, there is obviously a dispute as to this fact. Other evidence, including the Portune letter, and the audiotape conversation of Morgue employees, indicate that more people were, at the very least, aware of Condon's activities than merely Dr. Tobias. The parties dispute the meaning of the statement of Gros and Parrott that they needed to "protect the County." Although a reasonable person could see the statement as an expression of every County employee's duty to the County, a reasonable person could also see the expression in a dubious light as it was uttered in the context of a suspension of an employee in the midst of a scandal. Defendant Pfalzgraf's testimony is further evidence of the Prosecutor's Office alleged involvement in a potential cover-up. Pfalzgraf testified that Parrott stated his "hands were tied" and that Parrott told him that he was doing what the prosecutors told him to do. Dr. Tobias testified that Parrott knew about Condon's art books from the very beginning. A reasonable person could believe this assertion and thus conclude that a policy-maker in the Coroner's Office, the Coroner, knew or should have known about Condon's activities. Finally, Tobias' testimony that "no overt threats" were made against him can be viewed by a reasonable person to indicate that some sort of inappropriate pressure was exerted against him. The fact that the Prosecutor's Office did not appeal the reversal of Tobias' criminal conviction, and that Tobias provided helpful testimony to the County very shortly thereafter does indeed raise an inference that an improper deal could have been brokered during the "secret" Sunday meeting between Tobias and Prosecuting Attorney Hurley. Though Defendants deny

any such deal, citing Tobias' attorney for support of their position, Plaintiffs are correct in their position that they should not have to rely on representations of an adverse party. A prudent person could reasonably believe that if a cover-up deal was brokered, any testimony to the contrary should be disregarded as unreliable.

■ The Court's conclusion is bolstered by the fact that "it is appropriate to recognize a privilege 'only to the very limited extent that... excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), *quoted in In Re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir.) *cert. denied sub nom. Office of President v. Office of Indep. Counsel*, 521 U.S. 1105, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997). The Sixth Circuit has noted that many courts and commentators have been guided by this principle in cautioning against the broad application of the attorney-client privilege to governmental entities. *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) *citing Restatement (Third) of the Law Governing Lawyers § 124*, cmt. B; 24 Wright and Graham § 5475, at 126. The governmental privilege stands squarely in conflict with the strong public interest in open and honest government. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 916, 920–21.

Taken together, the Court finds that a reasonable person could find that the evidence supports Plaintiffs' theory of a cover-up. *United States v. Collis*, 128 F.3d 313, 321 (6th Cir.1997). THE COURT DOES NOT FIND THAT THERE WAS INDEED A COVER–UP, but merely that there is enough evidence to support Plaintiffs' theory, and thus to permit the depositions to go forward. For this reason Plaintiffs should be entitled to depose the four prosecuting attorneys on issues relating to the alleged cover up, including the Sunday meeting and the reasoning behind the decision not to appeal Tobias' criminal conviction.[4] The deponents shall not invoke the attorney-client or work product privileges as to these issues. *See*

4. In addition, the facts of this widely-publicized

case could only create doubt in the public mind

*National Mortgage Equity Corp. Mortgage Pool Certificates Litigation,* 116 F.R.D. 297, 302 (C.D.Cal.1987) (where crime-fraud exception met, court may fashion an order prohibiting deponents from asserting attorney-client or work product privileges).

In addition to the dispute concerning the alleged cover-up, the Court finds it appropriate to address the arguments concerning 1) Mr. Allen and the Opinion Letter, 2) Mr. Longano and the criminal case, 3) the drafting of the Tobias affidavit, and 4) the fact that the Court has already dismissed the Conspiracy Count of Plaintiffs' Complaint.

■ First, the Court finds that as Parrott waived any attorney/client privilege attached to the Opinion Letter, such privilege cannot serve as a basis to preclude questioning of Allen. Although Mr. Stevenson, an assistant prosecutor, drafted the letter, Allen signed it and his perspective about the Opinion Letter would not necessarily be cumulative to that of his subordinate.

Second, Defendants argue that Plaintiffs have not offered a basis to depose Mr. Longano, who prosecuted Tobias in the criminal action. However, the Court finds that Longano, to the extent that he participated in the decision not to appeal the reversal of Tobias' conviction, if at all, is a fair target for deposition, as explained above.

■ Third, as for the drafting of Tobias' affidavit, the Court finds that notwithstanding the crime-fraud exception, such topic is fair game for deposition as it is not privileged. Tobias' counsel refused to let him answer any questions about the drafting process of the affidavit, based on the attorney-client privilege and common interest rules. Tobias was merely permitted to testify that the original text of the affidavit came from Counsel for the County. The Court finds well-taken Plaintiffs' position that the affidavit in this case, drafted by the attorney for another Defendant, cannot be cloaked with attorney/client privilege. Moreover, Tobias did not necessarily have a "common interest" with the County, which had charged him with crimes, and which Tobias accused of trying to

get him to "take the fall for everyone else's screw-ups."

Fourth, the Court notes that both the Non–Party Attorneys and Parrott argue that the Court's dismissal of the Conspiracy Count of Plaintiffs' Complaint serves as some indication that the current cover-up allegations lack merit. Such argument is not well-taken. The Court found no evidence of a conspiracy among the Defendants with Condon to take the photographs, yet this is an entirely different matter from a possible cover-up by the County to limit its Section 1983 liability.

## II. Defendants' Unopposed Joint Motion for Extension of Time to Respond to Plaintiffs' Motion for Approval of Class Notice, and for Trial Scheduling Order, Bellwether Trial, Summary Jury Trial, and Status Conference (doc. 148)

Defendants request an extension of time (doc. 148) in order to respond to Plaintiffs' Motion for Approval of Class Notice, and for Trial Scheduling Order, Bellwether Trial, Summary Jury Trial, and Status Conference (doc. 138). Defendants indicate that in order to adequately respond to Plaintiffs' Motion, they need to conduct a deposition of one of Plaintiffs' expert witnesses, Paul Deardorff. Such deposition is to take place in mid-February, and the parties have agreed that Defendants shall file their memoranda in opposition to Plaintiffs' motion on or before March 1, 2004. Plaintiffs shall then have until March 15, 2004 to file their Reply.

Having reviewed this matter, the Court finds Defendants' unopposed motion well-taken. The motion is not interposed for purpose of delay, and none of the parties shall be prejudiced by the grant of this brief extension. Accordingly, the Court grants Defendants' Motion.

## III. Conclusion

The Court finds that the Magistrate Judge did not err in granting Plaintiffs' Motion to Compel (doc. 125), and therefore AFFIRMS the Magistrate Judge's Order that County Defendants produce all drafts of the Opinion

---

as to management of the Coroner's office and its relationship to the County Prosecutor's Office. Allowing the depositions to go forward is consonant with the strong public interest in restoring

confidence in the Hamilton County government: if the facts show a cover-up, it can thus be addressed; while if the facts show no cover-up, then the cloud of doubt will evaporate.

Letter (*Id.*). However, the Court does not find bad faith on the part of Defendants' Counsel, and therefore VACATES that portion of the Magistrate Judge's order requiring Defendants to pay Plaintiffs' attorney fees and expenses associated with the filing the Motion to Compel (doc. 125).

The Court further finds that the Magistrate Judge did not err in refusing to quash the deposition of David Stevenson (doc. 128). However, as the Magistrate Judge erred in the application of the crime-fraud exception to the attorney-client privilege, the Court VACATES that portion of the Order granting Defendants' Motion to Quash the depositions of Michael Allen, Thomas Longano, and Brian Hurley (*Id.*). Such depositions shall proceed in conformity with this Order.

Finally, the Court GRANTS Defendants' Unopposed Joint Motion For Extension of Time to Respond to Plaintiffs' Motion for Approval of Class Notice, and for Trial Scheduling Order, Bellwether Trial, Summary Jury Trial, and Status Conference (doc. 148).

SO ORDERED.